Case 1:25-cv-01337-DEH-SLC   Document 1-1   Filed 02/14/25   Page 1 of 45

Exhibit A to Notice of Removal

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

Date Filed:1/15/25

Index No.

-------------------------------------------------------X,

MOHAMED MONASAR and GABRIELLE
WALLS , *on* behalf of themselves and others
similarly situated

<table>
<tr><td>Plaintiff,</td><td>**SUMMONS**</td></tr>
<tr><td>-against-</td><td>Plaintiff designates<br>New York County as the place<br>of trial pursuant to CPLR 503</td></tr>
</table>

THE CITY OF NEW YORK, TARGET
CORPORATION and THE NEW YORK
TIMES COMPANY

Defendants.

-------------------------------------------------------X

**TO THE ABOVE NAMED DEFENDANTS**:

**YOU ARE HEREBY SUMMONED** to answer the complaint in this action and to serve a copy of your Answer, or if the complaint is not served with the summons, to serve a notice of appearance on Plaintiff's attorney within twenty (20) days after service of this summons, exclusive of the day of service, (or within thirty (30) days after service is complete, if this summons is not personally delivered to you within the State of New York); and in case of your failure to answer, judgment will be taken against you by default for the relief demanded hereto.

Dated:          New York, New York
                January 14, 2025

                                              Yours, etc.

                                              /s/ John Scola_____
                                              John Scola
                                              Law Office of John A. Scola, PLLC
                                              Attorneys for the Plaintiffs Mohamed
                                              Monasar and Gabrielle Walls, on behalf of
                                              themselves and others similarly situated
                                              90 Broad Street, 10th Floor
                                              New York, NY 10004
                                              (917) 423-1445

DEFENDANTS ADDRESS:
City of New York
Corporation Counsel of the City
Of New York
100 Church Street
New York, NY 10007

1

TARGET CORPORATION
1000 Nicollet Mall TPN 12,
 Minneapolis, MN 55403

THE NEW YORK TIMES CORPORATION
242 West 41st Street
New York, NY 10036

Case 1:25-cv-01337-DEH-SLC    Document 1-1    Filed 02/14/25    Page 3 of 45
Exhibit A to Notice of Removal

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

_____

MOHAMED MONASAR and GABRIELLE WALLS , on
behalf of themselves and others  similarly situated

                                Plaintiffs

    **v.**

THE CITY OF NEW YORK, TARGET CORPORATION and
THE NEW YORK TIMES COMPANY

                           Defendants
_____X

Index #:

**VERIFIED
CLASS AND COLLECTIVE
ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

    Plaintiffs Mohamed Monasar and Gabrielle Walls, on behalf of themselves and others similarly situated, by and though their attorneys the Law Office of John A. Scola, PLLC, Goddard Law, PLLC and Charny & Wheeler P.C., hereby allege as follows against Defendants City of New York and the New York City Police Department (referred to as the "NYPD"), Target Corporation ("Target") and The New York Times Company ("NYT") (collectively with NYPD, "Defendants").

## NATURE OF THE CLAIMS

    1.    For all relevant time to this Complaint, the NYPD has operated its "Paid Detail Program," whereby the NYPD staffs Police Officers, Detectives, Sergeants, and Lieutenants at private businesses throughout New York City, including those owned and operated by Target and NYT, to perform off-duty uniformed security work for hourly pay.

    2.    The compensation and terms and conditions of employment of the NYPD Officers assigned to work at Target and NYT are jointly controlled by the Defendants.

    3.    For all relevant time to this Complaint, Defendants have engaged in a pattern and practice of failing to compensate Plaintiffs and other similarly situated Officers for the work they perform at Target and NYT through the Paid Detail Program, and when paid at all, such payment is received long after the Plaintiffs' scheduled pay days.

3.      Plaintiffs bring this action against the Defendants for Wage Theft under both the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.* ("FLSA"), the New York Labor Law, N.Y. Lab. Law §§ 1, *et seq.* ("NYLL"), and in the alternative the Freelance Isn't Free Act, N.Y.C. Admin. Code §§ 20-927, *et seq.* ("FIFA").

4.      The FLSA claims are brought as a collective action pursuant to 29 U.S.C. § 216(b), on behalf of the Plaintiffs and all other similarly situated NYPD Officers (defined herein) employed by the NYPD and Target and/or NYT who participated in the Paid Detail Program at any time during the full statute of limitations period.

5.      The NYLL claims and the FIFA claims are brought as a class action pursuant to Article 9 of the CPLR on behalf of the Plaintiffs and all other similarly situated  Officers, employed by the NYPD and Target and/or NYT who participated in the Paid Detail Program at any time during the full statute of limitations period.

6.      The Defendants have additionally violated New York's Wage Theft Prevention Act by completely disregarding the obligation to provide the Plaintiffs and those similarly situated with the required Notices of Pay Rate and accurate Wage Statements.

## JURISDICTION and VENUE

7.      Jurisdiction is conferred upon this Court by New York Labor Law Section 198.

8.      Venue is proper in this Court pursuant to CPLR 503(a) in that a substantial part of the events occurred in New York County.

## PARTIES

### Plaintiff Mohamed Monasar

3.      Plaintiff is a resident of the State of New York and has been employed by the Defendants from 1996 until the present.

4

Case 1:25-cv-01337-DEH-SLC    Document 1-1    Filed 02/14/25    Page 5 of 45
Exhibit A to Notice of Removal

4.      Plaintiff Monasar was an "employee" of Defendants within the meaning of all relevant statutes and regulations.

**Plaintiff Gabrielle Walls**

5.      Plaintiff is a resident of the State of New York and has been employed by the Defendants NYPD and Target from 2000 until the present.

6.      At all relevant times, Plaintiff Walls was an "employee" of Defendants NYPD and Target within the meaning of all relevant statutes and regulations.

**Defendant CITY OF NEW YORK**

7.      The City of New York is a municipal corporation that controls and oversees, *inter alia*, the operations of the NYPD throughout its five boroughs.

8.      At all relevant times, the City of New York controlled and directed the terms of employment and compensation of Plaintiffs, and all persons similarly situated.

9.      At all relevant times, the City of New York established, implemented, disseminated, and controlled the employment policies applicable to Plaintiffs and all persons similarly situated, including, *inter alia*, policies concerning timekeeping, work allocation, task supervision, monitoring work product, payroll applicable to Plaintiffs and all persons similarly situated.

10.     At all relevant times, the City of New York maintained and exercised authority to hire, fire, discipline, and promote Plaintiffs and all persons similarly situated.

11.     At all relevant times, the City of New York was an "employer" within the meaning of all relevant statutes and regulations.

**Defendant New York City Police Department**

12.     The NYPD is a public administrative agency that controls and oversees the police throughout the City of New York's five boroughs.

5

Case 1:25-cv-01337-DEH-SLC    Document 1-1    Filed 02/14/25    Page 6 of 45

Exhibit A to Notice of Removal

13.     The NYPD maintains its principal office at One Police Plaza, New York, NY 10038.

14.     At all relevant times, the NYPD controlled and directed the terms of employment and compensation of Plaintiffs and all persons similarly situated.

15.     At all relevant times, the NYPD established, implemented, disseminated, and controlled the employment policies applicable to Plaintiffs and all persons similarly situated, including, *inter alia*, policies concerning timekeeping, work allocation, task supervision, monitoring work product, payroll applicable to Plaintiffs and all persons similarly situated.

16.     At all relevant times, the NYPD maintained and exercised authority to hire, fire, discipline, and promote Plaintiffs and all persons similarly situated.

17.     At all relevant times, the NYPD was an "employer" within the meaning of all relevant statutes and regulations.

**Defendant TARGET CORPORATION**

18.     Upon information and belief Defendant Target is a foreign corporation with its principal place of business located at 1000 Nicollet Mall TPN 12, Minneapolis, MN 55403, authorized to do business in the State of New York.

19.     Target participates in the NYPD's Paid Detail Program.

20.     At all relevant times, Target controlled and directed the terms of employment and compensation of Plaintiffs, and all persons similarly situated.

21.     At all relevant times, Target established, implemented, disseminated, and controlled the employment policies applicable to Plaintiffs and all persons similarly situated,

Case 1:25-cv-01337-DEH-SLC    Document 1-1    Filed 02/14/25    Page 7 of 45
Exhibit A to Notice of Removal

including, inter alia, policies concerning timekeeping, work allocation, task supervision, monitoring work product, payroll applicable to Plaintiffs and all persons similarly situated.

22.    At all relevant times, Target maintained and exercised authority to hire, fire, discipline, and promote Plaintiffs and all persons similarly situated.

23.    At all relevant times, Target was an "employer" and/or "hiring party" within the meaning of all relevant statutes and regulations.

### Defendant The New York Times Corporation

24.    Upon information and belief Defendant NYT is a domestic business corporation with its principal place of business located at 620 Eight Avenue, New York, NY, 10018.

25.    NYT participates in the NYPD's Paid Detail Program.

26.    At all relevant times, NYT controlled and directed the terms of employment and compensation of Plaintiff Monasar, and all persons similarly situated.

27.    At all relevant times, NYT established, implemented, disseminated, and controlled the employment policies applicable to Plaintiff Monasar and all persons similarly situated, including, inter alia, policies concerning timekeeping, work allocation, task supervision, monitoring work product, payroll applicable to Plaintiff Monasar and all persons similarly situated.

28.    At all relevant times, NYT maintained and exercised authority to hire, fire, discipline, and promote Plaintiff Monasar and all persons similarly situated.

29.    At all relevant times, NYT was an "employer" and/or "hiring party" within the meaning of all relevant statutes and regulations.

## FACTS

### A. Background

30.     In or around the Spring of 1998, the NYPD created the Paid Detail Program ("PDP") to allows employees of the NYPD to perform off-duty uniformed security work within New York City.

31.      The primary purpose of the PDP is to provide a highly visible police presence at participating businesses.

32.      NYPD personnel who hold any of the following titles may participate in the PDP: (i) Police Officer; (ii) Detective; (iii) Sergeant; (iv) Lieutenant or (v) Captains (collectively, "Officers").

33.      The PDP is the only authorized program for businesses to employ uniformed off-duty Officers.

34.      The PDP allows, with limited exceptions, any event planner, corporation, or interested organization approved by the NYPD to employ Officers part-time to provide uniformed security work.

35.      Officers are assigned to work at various businesses through the PDP, including, *inter alia*: (i) retail chains; (ii) department stores; (iii) supermarkets; (iv) houses of worship; (v) sports complexes; (vi) banks; and (vii) office buildings.

36.      The NYPD and the various Vendors work in concert to control all aspects of Officers' employment through the PDP.

### B. NYPD's Administration of the PDP and Employment of Officers

#### i. Approval and Denial of Businesses

37.      The NYPD must approve a business before it is permitted to employ Officers through the PDP.

FILED: NEW YORK COUNTY CLERK 01/15/2025 09:33 AM
NYSCEF DOC. NO. 1

INDEX NO. 150717/2025
RECEIVED NYSCEF: 01/16/2025

Case 1:25-cv-01337-DEH-SLC    Document 1-1    Filed 02/14/25    Page 9 of 45
Exhibit A to Notice of Removal

38.    The NYPD sets the parameters for business participation in the PDP.

39.    The NYPD allows, with limited exceptions, any event planner, corporation, or interested organization to qualify for the PDP, subject to the NYPD's approval.

40.    The NYPD excludes, inter alia, government and quasi-governmental entities and personal protection or bodyguard companies from participating in the PDP.

41.    To qualify, businesses are required to provide various information requested by the NYPD.

42.    The NYPD also performs a general background and credit check of each business.

43.    After the NYPD reviews a business's responses, background information, and credit information, it requires the business to sign a "Participation Agreement" and submit a certificate of insurance.

44.    Finally, the Commissioner of the NYPD reviews the signed Participation Agreement and certificate of insurance before granting or denying final approval for the business to participate in the PDP.

### ii. **Approval or Denial of NYPD Employees to Qualify as Officers**

45.    The NYPD also sets the parameters for Officers to participate in the PDP.

46.    To qualify, an Officer must meet various criteria, including, inter alia, possessing greater than one year of service in the NYPD and maintaining full duty status throughout the duration of the Officer's participation in the PDP.

47.    The NYPD excludes employees who are considered chronically sick, on performance monitoring, or in possession of "position limitations."

9

Case 1:25-cv-01337-DEH-SLC    Document 1-1    Filed 02/14/25    Page 10 of 45
Exhibit A to Notice of Removal

48.     Further, the NYPD limits participation in the PDP to personnel holding specific titles and ranks.

49.     NYPD employees must obtain approval from their commanders and submit a written application, as well as tax documentation, to be considered for participation in the PDP.

50.     Further, the NYPD's Paid Detail Unit reviews each applicant's work record before approving him or her to participate in the PDP.

51.     The NYPD maintains authority to unilaterally remove an Officer from the PDP if he or she is promoted or transferred to a position that disqualifies him or her, or is placed on performance monitoring.

### iii.  Direction and Control of PDP Details

52.     The NYPD maintains direction, control, and supervision of the assignment of Officers to PDP details.

53.     Further, the NYPD maintains and operates an online portal through which participating businesses may schedule Officers to perform off-duty uniformed security work.

54.     The NYPD controls when businesses may schedule Officers for details and requires that details last from four to 12 hours.

55.     The NYPD evaluates each requested detail and, based on its assessment of safety and security concerns, determines the minimum number of Officers necessary for assignment, as well as the number of Officers required to supervise.

56.     The NYPD also controls and determines when Officers may accept details and the number of hours per month Officers may work the same.

57.     The NYPD limits Officers with more junior ranks, such as Police Officer or Detective, to a maximum of 80 hours of PDP work per month.

10

Case 1:25-cv-01337-DEH-SLC   Document 1-1   Filed 02/14/25   Page 11 of 45
Exhibit A to Notice of Removal

58.     The NYPD limits Officers with the more senior ranks, such Sergeant or Lieutenant, to a maximum of 30 hours of PDP work per month.

59.     The NYPD prohibits Officers from working PDP assignments within three hours of the start of their regularly scheduled non-PDP tours.

60.     Similarly, the NYPD prohibits Officers from working PDP assignments within one hour of the end of their regularly scheduled non-PDP tours.

61.     The NYPD requires Officers to complete Paid Detail Cards for each PDP detail they work.

62.     The NYPD prohibits Officers from trading PDP details with one another.

63.     Per its policies, the NYPD suspends Officers who request PDP details on behalf of other Officers or perform PDP details originally assigned to another Officer without the NYPD's prior authorization.

64.     The NYPD also requires that Officers provide documentation to their NYPD supervisors in the event they have to cancel a previously scheduled PDP detail.

65.     Officers who fail to provide such documentation risk being deemed ineligible for future PDP assignments.

66.     The NYPD prohibits Officers from working for participating businesses, including the Vendors, outside of the PDP.

67.     Officers who schedule details directly with a participating business are disciplined and deemed ineligible for future PDP assignments.

### iv.  Control Over Officers' Uniforms and Physical Appearance on PDP Details

68.     The NYPD maintains control and direction over the uniforms and physical appearance of Officers on PDP details.

11

69.     The NYPD establishes and enforces a dress code for all Officers on PDP details.

70.     The NYPD mandates that Officers wear NYPD-approved clothing on PDP details, including full uniforms, vests, and eight-point caps.

71.     The NYPD prohibits Officers from wearing, inter alia, baseball caps, raid jackets, and other non-uniform apparel.

72.     The NYPD requires Officers to conform to the same grooming and appearance standards applicable to Officers on regularly scheduled non-PDP tours.

73.     The NYPD directs Officers to bring NYPD-issued radios, batons, and activity logs on PDP assignments.

74.     The NYPD subjects Officers to inspection by NYPD supervisors to ensure compliance with PDP uniform and physical appearance requirements.

**v.** **Control Over Officers' Work During PDP Details**

75.     The NYPD maintains direction, control, and supervision of the work performed by Officers during PDP details.

76.      Upon arrival at a participating business, the NYPD commands Officers to report to the business's representative or to the ranking Officer supervising the detail.

77.     Additionally, the NYPD directs Officers to sign in on a Paid Detail Attendance Sheet when they arrive.

78.     The NYPD cautions Officers that they are subject at all times to NYPD rules and regulations while working on PDP details.

79.     The NYPD assigns high-ranking officials, such as Sergeants, Lieutenants, and Captains, to perform daily rounds of PDP details to monitor Officers' work.

Case 1:25-cv-01337-DEH-SLC    Document 1-1    Filed 02/14/25    Page 13 of 45

Exhibit A to Notice of Removal

80.     The NYPD mandates that Officers report to the NYPD any arrests or Officer injuries that occur on PDP details.

81.     At the conclusion of a PDP detail, the NYPD directs Officers to sign out on a Paid Detail Attendance Sheet and present a Paid Detail Card to the participating business's representative or the ranking Officer for signature.

82.     The NYPD instructs participating businesses to report any Officer who breaches NYPD standards.

83.     The NYPD also instructs participating businesses to report any Officer who breaches the business's own internal policies.

84.     The NYPD disciplines Officers who breach NYPD standards or a business's policies on a PDP detail by, inter alia: (i) removing the given Officer from the detail; (ii) banning the Officer from future details with a specific business; (iii) suspending an Officer's PDP eligibility; or (iv) expelling an Officer from participation in the PDP completely.

**vi.  Control Over Officers' Wages**

85.     The NYPD directs and controls the manner in which Officers are paid through the PDP.

86.     The NYPD establishes uniform hourly rates based on each Officer's rank.

87.     The NYPD has set an hourly rate of $41.00 for Officers with the rank of Police Officer or Detective.

88.     The NYPD also charges participating businesses an administrative fee of $4.10 for each hour of PDP work performed by a Police Officer or Detective.

89.     The NYPD has set an hourly rate of $51.00 for Officers with the rank of Sergeant.

Exhibit A to Notice of Removal

Case 1:25-cv-01337-DEH-SLC    Document 1-1    Filed 02/14/25    Page 14 of 45

90.     The NYPD also charges participating businesses an administrative fee of $5.10 for each hour of PDP work performed by a Sergeant.

91.     The NYPD has set an hourly rate of $57.00 for Officers with the rank of Lieutenant.

92.     The NYPD also charges participating businesses an administrative fee of $5.70 for each hour of PDP work performed by a Lieutenant.

93.     The NYPD has set an hourly rate of $87.00 for Officers with the rank of Captains.

94.     The NYPD also charges participating businesses an administrative fee of $8.70 for each hour of PDP work performed by a Captain.

95.     The NYPD directs and controls the employment status of Officers, mandating that Officers are classified (incorrectly) as independent contractors for PDP details.

96.     The NYPD requires payment to Officers on an IRS Form 1099, as opposed to an IRS Form W-2.

97.     The NYPD directs Officers to list 1 Police Plaza, New York, New York 10038 (rather than the Officers' home addresses) when completing tax forms for PDP details.

98.     The NYPD administers payment to Officers through the NYPD's Paid Detail Unit.

99.     The NYPD does not permit participating businesses to pay Officers directly.

**C.  Target's and NYT's Participation in the PDP and Employment of Officers**

100.    For all relevant times, Defendants Target and NYT (herein the "Vendor Defendants") obtained and maintained approval to employ Officers as part of the PDP.

101.    Once so approved the Vendor Defendants in their own regard coordinated and continue to coordinate with the NYPD to assess how many Officers the business needs to staff a particular PDP detail.

Case 1:25-cv-01337-DEH-SLC    Document 1-1    Filed 02/14/25    Page 15 of 45

Exhibit A to Notice of Removal

102.    The Vendor Defendants direct and control the dates Officers work on PDP details.

103.    The Vendor Defendants, post solicitations on the PDP portal for Officers to view and ultimately accept.

104.    By way of a "Participation Agreement entered into between the Vendor Defendants and NYPD, the Vendor Defendants agree to pay Officers at the uniform hourly rates set forth in the PDP.

105.    Once an Officer is hired, the Vendor Defendants direct and control the Officers throughout the PDP detail.

106.    The Vendor Defendants direct Officers to the exact location where they are to work throughout the PDP detail.

107.    The Vendor Defendants determine the meal and break policies for Officers and dictate the circumstances under which an Officer may intervene, such as by detaining a customer suspected of theft.

108.    The Vendor Defendants require Officers to report their work in Activity Logs at thirty minute intervals throughout their PDP detail.

109.    The Vendor Defendants subject Officers to discipline and report Officers to the NYPD for failing to follow the Vendor Defendants' policies.

110.    The Vendor Defendants enforce NYPD standards in the same manner, by reporting Officers for failing to comply with the same.

111.    The Vendor Defendants control the staffing of Officers insofar as the Vendor Defendants may decline an Officer who accepts a detail through the PDP portal.

112.    The Vendor Defendants possess the power to extend an Officer's PDP detail past its scheduled end time.

Case 1:25-cv-01337-DEH-SLC Document 1-1 Filed 02/14/25 Page 16 of 45

Exhibit A to Notice of Removal

113. The Vendor Defendants direct and control when Officers are paid for work performed on PDP details.

### D. Failure to Pay the Minimum Wage and Timely Wages

114. The Defendants agree to pay Plaintiffs and all other Officers an established hourly rate based on the Officer's respective NYPD rank for all work performed on a PDP.

115. The established hourly rates are communicated by the Defendants to the Plaintiffs on the PDP portal where Plaintiffs and all other Officers accept PDP details.

116. Plaintiffs and all other Officers' pay day is every other Friday, covering the pay period of the previous 14-days including the pay day.

117. Defendants routinely fail to pay Plaintiffs and all other Officers for PDP details at all, and when paid the delay is weeks, and even months after Officers complete the PDP details.

118. Defendants have engaged in a pattern and practice of denying Plaintiffs and all other Officers minimum wages and all earned wages at their regular rates of pay.

### E. Failure to Provide Notice of Pay Rate and Accurate Wage Statements

119. New York's Wage Theft Prevention Act requires that employers, including Defendants, provide employees, "at the time of hiring, a notice containing the following information: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer [ ]; the name of the employer; any 'doing business as' names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the

Exhibit A to Notice of Removal

Case 1:25-cv-01337-DEH-SLC Document 1-1 Filed 02/14/25 Page 17 of 45

commissioner deems material and necessary," which is commonly referred to as a Notice of Pay Rate.

120. Throughout the statutory period, the Defendants have never provided Plaintiffs or any other Officer with a Notice of Pay Rate.

121. The NYLL also requires that employers, including Defendants Target and NYT issue or provide employees with accurate wage statements with each payment of wages.

122. Defendants Target and NYT never furnished Plaintiffs or any of the other Officers with accurate wage statements during the statutory period.

### G. **Plaintiff Mohamed Monasar**

#### i. **Background**

123. Plaintiff Monasar was hired as a police officer for the Defendant CITY on July 13, 2016.

124. Plaintiff Monasar first began participating in the PDP for the Defendant CITY in 2017.

125. Plaintiff Monasar was promoted to Sergeant by the Defendant CITY in July 2023.

126. After being promoted to Sergeant, Plaintiff Monasar continued to participate in the PDP.

127. At all times herein Plaintiff Monasar excelled in his role as a police officer, and sergeant.

128. Plaintiff Monasar first worked for Defendant Target on June 4, 2023.

129. At all times during his PDP detail on that date and thereafter, Defendant Target collectively and jointly supervised and controlled the terms of Plaintiff Monasar's employment by, *inter alia*, assigning Plaintiff a radio and directing him as to: (1) the specific

Case 1:25-cv-01337-DEH-SLC    Document 1-1    Filed 02/14/25    Page 18 of 45
Exhibit A to Notice of Removal

instructions and directions for the work he was to perform; (2) the specific policies and regulations Plaintiff was required to follow while working for Defendant Target; (3) the conduct or behavior that was prohibited verses what was expected while working for Defendant Target; (4) the specific areas he was required to monitor and the manner in which he was required to patrol them; (5) suspicious activity he was required to look out for; (6) the manner in which he was required to respond to various incidents; (7) the specific time he was permitted to take a meal break; (8) what he was required to do upon his return from lunch; (9) which other Officers he was required to relieve; (10) which third party vendors were allowed on the premises and under what circumstances; (11) which individuals were permitted into the building and which were prohibited; and (12) the manner in which he maintained his appearance, including the requirement that Plaintiff wear his eight-point hat throughout the entirety of the shift.

130.    In total, Plaintiff has worked approximately 65 PDP details for Defendants at Defendant Target.

131.    Plaintiff Monasar first worked for Defendant NYT on NOVEMBER 21, 2023

132.    At all times during his PDP detail on that date and thereafter, Defendant NYT collectively and jointly supervised and controlled the terms of Plaintiff Monasar's employment by, *inter alia*, assigning Plaintiff a radio and directing him as to: (1) the specific instructions and directions for the work he was to perform; (2) the specific policies and regulations Plaintiff was required to follow while working for Defendant NYT; (3) the conduct or behavior that was prohibited verses what was expected while working for Defendant NYT; (4) the specific areas he was required to monitor and the manner in which he was required to patrol them; (5) suspicious activity he was required to look out for; (6) the manner in which he was required to

FILED: NEW YORK COUNTY CLERK 01/15/2025 09:33 AM
INDEX NO. 150717/2025
NYSCEF DOC. NO.: 1
RECEIVED NYSCEF: 01/16/2025
Case 1:25-cv-01337-DEH-SLC    Document 1-1    Filed 02/14/25    Page 19 of 45
Exhibit A to Notice of Removal

respond to various incidents; (7) the specific time he was permitted to take a meal break; (8) what he was required to do upon his return from lunch; (9) which other Officers he was required to relieve; (10) which third party vendors were allowed on the premises and under what circumstances; (11) which individuals were permitted into the building and which were prohibited; and (12) the manner in which he maintained his appearance, including the requirement that Plaintiff wear his eight-point hat throughout the entirety of the shift.

133.    In total, Plaintiff has worked approximately 32 PDP details for Defendants at Defendant NYT.

### ii. **Wage Violations by NYPD and Target**

134.    Defendants NYPD and Target failed to properly pay Plaintiff for his hours worked on PDP details in several ways.

135.    Defendants NYPD and Target failed to timely pay Plaintiff for the hours worked on PDP details.

136.    Throughout the statutory period, Plaintiff's regularly scheduled pay day is/was every other Friday, covering the previous 14-day time frame, including the Friday payday.

137.    However, Defendants NYPD and Target routinely failed to pay Plaintiff for his PDP tours on his regularly scheduled pay day.

138.    For example, on December 27, 2023, Plaintiff worked from 07:00 x 23:00 at the Target Store located at 139 Flatbush Avenue.

139.    To date the Defendants have not paid Plaintiff for the aforementioned tour.

140.    On December 28, 2023, Plaintiff worked from 07:00 x 15:00 at the Target Store located at 139 Flatbush Avenue.

141.    To date the Defendants have not paid Plaintiff for the aforementioned tour.

Case 1:25-cv-01337-DEH-SLC    Document 1-1    Filed 02/14/25    Page 20 of 45

Exhibit A to Notice of Removal

142.    On February 21, 2024, Plaintiff worked from 08:00 x 23:00 at the Target Store located at New York City.

143.    To date the Defendants have not paid Plaintiff for the aforementioned tour.

144.    On March 6, 2024, Plaintiff worked from 08:00 x 15:00 at the Target Store located at New York City.

145.    To date the Defendants have not paid Plaintiff for the aforementioned tour.

146.    On March 7, 2024, Plaintiff worked from 08:00 x 15:00 at the Target Store located at New York City.

147.    To date the Defendants have not paid Plaintiff for the aforementioned tour.

148.    On March 20, 2024, Plaintiff worked from 08:00 x 15:00 at the Target Store located at New York City.

149.    To date the Defendants have not paid Plaintiff for the aforementioned tour.

150.    On March 21, 2024, Plaintiff worked from 08:00 x 15:00 at the Target Store located at New York City.

151.    To date the Defendants have not paid Plaintiff for the aforementioned tour.

152.    On June 5, 2024, Plaintiff worked from 08:00 x 15:00 at the Target Store located at New York City.

153.    To date the Defendants have not paid Plaintiff for the aforementioned tour.

154.    On September 1, 2024, Plaintiff worked from 08:00 x 15:00 at the Target Store located at New York City.

155.    To date the Defendants have not paid Plaintiff for the aforementioned tour.

156.    On September 2, 2024, Plaintiff worked from 08:00 x 15:00 at the Target Store located at New York City.

Case 1:25-cv-01337-DEH-SLC    Document 1-1    Filed 02/14/25    Page 21 of 45
Exhibit A to Notice of Removal

157.    To date the Defendants have not paid Plaintiff for the aforementioned tour.

158.    On December 23, 2024, Plaintiff worked from 07:00 x 15:00 at the Target Store located at New York City.

159.    To date the Defendants have not paid Plaintiff for the aforementioned tour.

160.    On January  7, 2024, Plaintiff worked from 07:00 x 15:00 at the Target Store located at New York City.

161.    To date the Defendants have not paid Plaintiff for the aforementioned tour.

162.    The Defendants have yet to pay Plaintiff for any of the aforementioned tours that he worked dating back to December 2023.

163.    Several other Officers have confirmed to Plaintiff that Defendants also failed to timely pay their wages.

164.    Upon information and belief, every Officer that has worked and currently works for NYPD and Target has been subject to the same pattern and practice of failure to pay.

165.    As such, the Defendants have failed to compensate Plaintiff, in violation of the minimum wage required to pay workers in New York State under both Federal and State law.

166.    By so acting, the NYPD and Defendant Target have paid Plaintiff below the federal and state minimum wage rates and below his regular rate  of pay for all hours worked.

167.    To the extent Plaintiff Monasar and those similarly situated have received any payments for his work for NYPD and Target, it has been several months late, on multiple occasions.

168.    This has continued for more than a year.

169.    In fact, some police officers have stopped working for Target due to their refusal to timely pay the officers for the tours that they worked in accordance with the law.

Case 1:25-cv-01337-DEH-SLC    Document 1-1    Filed 02/14/25    Page 22 of 45

Exhibit A to Notice of Removal

170.     Upon information and belief, every Officer that has worked and currently works for NYPD and Target has been subject to the same pattern and practice of significant delays in payment, to the extent they are paid.

171.     Plaintiff Monasar and others similarly situated have work hours for NYPD and Target that caused their weekly total to exceed forty hours.

172.     For example on August 15, 2024, Plaintiff worked 8:00 hours for Defendant Target, a period of time that brought his weekly total in excess of forty hours.

173.     NYPD and Target have failed to pay to Plaintiff Monasar the mandatory overtime premium for the hours worked in excess of forty.

174.     Upon information and belief, every Officer that has worked and currently works for NYPD and Target has been subject to the same pattern and practice of being denied overtime pay when  PDP hours cause the Officer to exceed forty in the week.

175.     Defendant Target never provided accurate Wage Statements for any of the PDP details that Plaintiff Monasar completed.

176.     Defendant Target never provided Plaintiff Monasar with a Notice of Pay Rate.

    iii.  **Wage Violations by NYPD and NYT**

177.     Defendants NYPD and NYT failed to properly pay Plaintiff for his hours worked on PDP details in several ways.

178.     Defendants NYPD and NYT failed to timely pay Plaintiff for the hours worked on PDP details.

179.     Throughout the statutory period, Plaintiff's regularly scheduled pay day is/was every other Friday, covering the previous 14-day time frame, including the Friday payday.

Case 1:25-cv-01337-DEH-SLC    Document 1-1    Filed 02/14/25    Page 23 of 45

Exhibit A to Notice of Removal

180.    However, Defendants N Y P D a n d N Y T failed to pay Plaintiff for his PDP tours on his regularly scheduled pay day.

181.    On December 11, 2024. Plaintiff worked from 07:00 x 15:00 at the NYT building located at 242 West 41st Street, New York, NY 100036.

182.    To date the Defendants have not paid Plaintiff for the aforementioned tour.

183.    Typically the NYT takes between four (4) and six (6) months to pay the officers whom they hire for the PDP.

184.    1Other Officers have confirmed to Plaintiff that Defendants N Y P D a n d N Y T also failed to timely pay their wages.

185.    Upon information and belief, every Officer that has worked and currently works for NYPD and NYT has been subject to the same pattern and practice of failure to pay.

186.    As such, the Defendants have failed to compensate Plaintiff, in violation of the minimum wage required to pay workers in New York State under both Federal and State law.

187.    By so acting, the NYPD and NYT have paid Plaintiff below the federal and state minimum wage rates and below his regular rate of pay for all hours worked.

188.    Upon information and belief, every Officer that has worked and currently works for NYPD and Target has been subject to the same pattern and practice of significant delays in payment, to the extent they are paid.

189.    Upon information and belief, NYPD and NYT have failed to pay to similarly situated Officers the mandatory overtime premium for the hours worked in excess of forty when such excess hours are caused by a PDP detail.

190.    Defendant NYT never provided accurate Wage Statements for any of the PDP details that Plaintiff Monasar completed.

Case 1:25-cv-01337-DEH-SLC   Document 1-1   Filed 02/14/25   Page 24 of 45

Exhibit A to Notice of Removal

191.   Defendant NYT never provided Plaintiff Monasar with a Notice of Pay Rate.

## G. **Plaintiff Gabrielle Walls**

### i. **Background**

192.   Plaintiff Walls was hired as a police officer for the Defendant CITY on September 29, 2000.

193.   Plaintiff was promoted to Sergeant by the Defendant CITY in 2007.

194.   Plaintiff first joined the PDP in November 2010.

195.   Plaintiff was promoted to Lieutenant by the Defendant CITY in 2015.

196.   Plaintiff was promoted to Captain by the Defendant CITY in May 2022.

197.   At all times herein Plaintiff excelled in her roles as a police officer, sergeant, lieutenant and Captain.

198.   In 2022, the Defendant CITY's PDP extended to include NYPD executives (the rank of Captain or above).

199.   Plaintiff joined the PDP as a Captain in 2022.

200.   Shortly thereafter, Plaintiff first worked for Defendant TARGET as a Captain.

201.   At all times during her PDP detail at Defendant City and Defendant Target, collectively and jointly supervised and controlled the terms of Plaintiff's employment by, *inter alia*, assigning Plaintiff a radio and directing him as to: (1) the specific instructions and directions for the work he was to perform; (2) the specific policies and regulations Plaintiff was required to follow while working for Defendant Target; (3) the conduct or behavior that was prohibited verses what was expected while working for Defendant Target; (4) the specific areas he was required to monitor and the manner in which he was required to patrol them; (5) suspicious activity he was required to look out for; (6) the manner in which he was required to

Exhibit A to Notice of Removal
Case 1:25-cv-01337-DEH-SLC    Document 1-1    Filed 02/14/25    Page 25 of 45

respond to various incidents; (7) the specific time he was permitted to take a meal break; (8) what he was required to do upon his return from lunch; (9) which other Officers he was required to relieve; (10) which third party vendors were allowed on the premises and under what circumstances; (11) which individuals were permitted into the building and which were prohibited; and (12) the manner in which he maintained his appearance, including the requirement that Plaintiff wear his eight-point hat throughout the entirety of the shift.

202. In total, in her time in the PDP Plaintiff has worked approximately 212 PDP details for Defendant Target.

203. On average Plaintiff works approximately 500 hours a year in the PDP.

### ii. **Wage Violations**

204. Defendants NYPD and Target failed to properly pay Plaintiff Walls for her hours worked on PDP details in several ways.

205. Defendants NYPD and Target failed to timely pay Plaintiff for the hours worked on PDP details.

206. Throughout the statutory period, Plaintiff's regularly scheduled pay day was every other Friday, covering the previous 14 days including the payday.

207. However, Defendants N Y P D a n d T a r g e t routinely failed to pay Plaintiff for her PDP tours on her regularly scheduled pay day.

208. For example on April 17, 2024, Plaintiff worked from 15:00 x 23:00 at the Target Store #2212 located in Flatbush.

209. To date the Defendants have not paid Plaintiff for the aforementioned tour.

210. On May 17, 2024, Plaintiff worked from 15:00 x 19:30 at the Target Store #2212 located in Flatbush.

Case 1:25-cv-01337-DEH-SLC    Document 1-1    Filed 02/14/25    Page 26 of 45

Exhibit A to Notice of Removal

211.    To date the Defendants have not paid Plaintiff for the aforementioned tour.

212.    On July 4, 2024, Plaintiff worked from 08:00 x 16:00 at the Target Store #1401 located on Gateway Drive.

213.    To date the Defendants have not paid Plaintiff for the aforementioned tour.

214.    On July 28 2024, Plaintiff worked from 15:00 x 23:00 at the Target Store #1401 located on Gateway Drive.

215.    To date the Defendants have not paid Plaintiff for the aforementioned tour.

216.    On July 29 2024, Plaintiff worked from 16:00 x 23:00 at the Target Store #2212 located in Flatbush.

217.    To date the Defendants have not paid Plaintiff for the aforementioned tour.

218.    On August 15 2024, Plaintiff worked from 15:00 x 23:00 at the Target Store #2212 located in Flatbush.

219.    To date the Defendants have not paid Plaintiff for the aforementioned tour.

220.    On December 23 2024, Plaintiff worked from 15:00 x 23:59 at the Target Store #2212 located in Flatbush.

221.    To date the Defendants have not paid Plaintiff for the aforementioned tour.

222.    On December 24 2024, Plaintiff worked from 07:00 x 17:00 at the Target Store #2212 located in Flatbush.

223.    To date the Defendants have not paid Plaintiff for the aforementioned tour.

224.    On December 31 2024, Plaintiff worked from 08:00 x 15:00 at the Target Store #2212 located in Flatbush.

225.    To date the Defendants have not paid Plaintiff for the aforementioned tour.

Case 1:25-cv-01337-DEH-SLC    Document 1-1    Filed 02/14/25    Page 27 of 45

Exhibit A to Notice of Removal

226.    On January 2, 2025 Plaintiff worked from 15:00 x 23:00 at the Target Store #2212 located in Flatbush.

227.    To date the Defendants have not paid Plaintiff for the aforementioned tour.

228.    On January 6, 2025 Plaintiff worked from 15:00 x 23:00 at the Target Store #2212 located in Flatbush.

229.    To date the Defendants have not paid Plaintiff for the aforementioned tour.

230.    On January 7, 2025 Plaintiff worked from 08:00 x 15:00 at the Target Store #2212 located in Flatbush.

231.    To date the Defendants have not paid Plaintiff for the aforementioned tour.

232.    On January 13, 2025 Plaintiff worked from 15:00 x 23:00 at the Target Store #2212 located in Flatbush.

233.    To date the Defendants have not paid Plaintiff for the aforementioned tour.

234.    On January 14, 2025 Plaintiff worked from 08:00 x 15:00 at the Target Store #2212 located in Flatbush.

235.    To date the Defendants have not paid Plaintiff for the aforementioned tours.

236.    The Defendants have yet to pay Plaintiff for any of the aforementioned tours that she worked dating back to April 2024.

237.    Several other Officers have confirmed to Plaintiff that Defendants also failed to timely pay their wages.

238.    Upon information and belief, every Officer that has worked and currently works for NYPD and Target has been subject to the same pattern and practice of failure to pay.

239.    As such, the Defendants have failed to compensate Plaintiff Walls, in violation of the minimum wage required to pay workers in New York State under both Federal and State law.

Case 1:25-cv-01337-DEH-SLC     Document 1-1     Filed 02/14/25     Page 28 of 45

Exhibit A to Notice of Removal

240.    By so acting, the NYPD and Defendant Target have paid Plaintiff Walls below the federal and state minimum wage rates and below his regular rate of pay for all hours worked.

241.    To the extent Plaintiff Walls and those similarly situated have received any payments for his work for NYPD and Target, it has been several month's late, on numerous occasions.

242.    Upon information and belief, every Officer that has worked and currently works for NYPD and Target has been subject to the same pattern and practice of significant delays in payment, to the extent they are paid.

243.    Defendant Target never provided accurate Wage Statements for any of the PDP details that Plaintiff Walls completed.

244.    Defendant Target never provided Plaintiff Walls with a Notice of Pay Rate.

## FLSA COLLECTIVE ACTION ALLEGATIONS

245.    Plaintiffs bring their FLSA claims as a collective action on behalf of themselves and all other similarly situated Officers who have been employed by the NYPD and participated in the PDP at any time during the full statute of limitations period (the "FLSA Collective").

246.    At all relevant times, Plaintiff and the FLSA Collective were similarly situated, had substantially similar job requirements, were paid in the same manner and under the same common policies, and were subject to Defendants' practices of: (i) failing to compensate Plaintiff and the FLSA Collective at the federal minimum wage for all hours worked in a workweek; and (ii) failing and refusing to timely pay all wages owed.

28

247.    At all relevant times, Defendants have been fully aware of the duties performed by Plaintiffs and the FLSA Collective, and that those duties are not exempt from the provisions of the FLSA.

248.    Defendants' violations of the FLSA have been willful, repeated, knowing, intentional, and without a good faith basis, and have significantly damaged Plaintiffs and the FLSA Collective.

249.    As a result of their unlawful conduct, Defendants are liable to Plaintiffs and the FLSA Collective for the full amount of their unpaid and late wages, with interest, plus an additional equal amount as liquidated damages, plus reasonable attorneys' fees and costs incurred by Plaintiffs and the FLSA Collective.

250.    While the exact number is unknown to Plaintiff at this time, upon information and belief, there are approximately 6000 members of the FLSA Collective.

251.    Plaintiff is currently unaware of the identities of the individual members of the FLSA Collective.

252.    Accordingly, the Court should require Defendants to provide Plaintiff with a list of all members of the proposed FLSA Collective, along with their last known home addresses, telephone numbers, and email addresses, so that Plaintiff may provide the members of the FLSA Collective with notice of this action and an opportunity to make an informed decision regarding whether to participate in the same.

## CLASS ACTION ALLEGATIONS

A.  **Identity of the Class**

253.    Plaintiffs bring the NYLL claims as a class action.

FILED: NEW YORK COUNTY CLERK 01/15/2025 09:33 AM INDEX NO. 150717/2025
NYSCEF DOC. NO.: 1 RECEIVED NYSCEF: 01/16/2025
Case 1:25-cv-01337-DEH-SLC    Document 1-1    Filed 02/14/25    Page 30 of 45
Exhibit A to Notice of Removal

254.     Plaintiffs seeks to maintain claims, pursuant to CPLR 901 and 902, on behalf of themselves and a class of all other Officers who worked for the NYPD and participated in the PDP at any time during the full statute of limitations period (the "Class").

255.     Plaintiffs allege, on behalf of themselves and the Class, that the Defendants violated the NYLL by, *inter alia*: (i) failing to compensate Plaintiffs and the Class for all hours worked; (ii) failing to compensate Plaintiffs and the Class at their established regular rates of pay and in accordance with their agreed terms of employment; (iii) failing to timely pay all wages owed; (iv) failing to provide Plaintiffs and the Class with Notices of Pay Rate; and (v) failing to furnish accurate wage statements to Plaintiffs and the Class.

256.     Plaintiff and the Class have standing to seek such relief because of the adverse effects that Defendants' wage practices have had on them individually and as a group.

257.     The wage practices described herein are part of the Defendants' normal course of conduct.

258.     Pursuant to CPLR 902 and 903, Plaintiff's NYLL and FIFA claims may be pursued by all similarly situated persons who do not opt out of the Class.

**B.  Numerosity and Impracticality of Joinder**

259.     The members of the Class are so numerous that joinder is impracticable.

260.     While the exact number is unknown to Plaintiff at this time, upon information and belief, there are approximately 1000 members of the Class that performed work at Defendant Target.

261.     While the exact number is unknown to Plaintiff at this time, upon information and belief, there are approximately 100  members of the Class that performed work at Defendant NYT.

FILED: NEW YORK COUNTY CLERK 01/15/2025 09:33 AM
NYSCEF DOC. NO. 1

INDEX NO. 150717/2025
RECEIVED NYSCEF: 01/16/2025

Case 1:25-cv-01337-DEH-SLC    Document 1-1    Filed 02/14/25    Page 31 of 45
Exhibit A to Notice of Removal

262. Therefore, the numerosity requirement of CPLR 902 and 903 is satisfied.

### C. Common Questions of Law and Fact

263. Common questions of law and fact, the answers to which will meaningfully advance this litigation, exist as to the Class and predominate over any questions only affecting the members of the Class individually.

264. Indeed, there are few, if any, purely individual issues in this action.

265. The questions of law and fact that are common to Plaintiffs and the Class include, without limitation.

    a. Whether the Vendor Defendants failed to pay Plaintiffs and the Class all minimum wages owed;

    b. Whether the Vendor Defendants failed to pay Plaintiffs and the Class all wages owed at their regular rates of pay and in accordance with their agreed terms of employment;

    c. Whether the Vendor Defendants failed to timely pay Plaintiffs and the Class their wages;

    d. Whether the Vendor Defendants failed to provide Plaintiffs and the Class with Notices of Pay Rate;

    e. Whether the Vendor Defendants failed to furnish accurate wage statements to Plaintiffs and the Class; and

    f. Whether Plaintiffs and the Class are entitled to liquidated damages and injunctive relief.

266. Therefore, the common question requirement of CPLR 902 and 903 is satisfied.

### D. Typicality of Claims and Relief Sought

31

Case 1:25-cv-01337-DEH-SLC    Document 1-1    Filed 02/14/25    Page 32 of 45

Exhibit A to Notice of Removal

267.    Plaintiffs' claims are typical of the claims of the members of the Class they seek to represent.

268.    Plaintiffs and the Class work, or have worked, for the Vendor Defendants and are, or were, subject to the same compensation policies and practices.

269.    The wage practices suffered by Plaintiffs, and the damages resulting therefrom, are typical of the Vendor Defendants' treatment of Officers assigned to them through the PDP, generally, and of the Class specifically.

270.    Therefore, the typicality requirement of CPLR 902 and 903 is satisfied.

### E. Adequacy of Representation

271.    Plaintiffs will fairly and adequately protect the interests of the Class because Plaintiffs' interests are coextensive and aligned with those of the Class.

272.    Plaintiffs have no interests adverse to the Class they seek to represent.

273.    Plaintiffs are willing and able to represent the Class as fairly and vigorously as they pursue their similar individual claims.

274.    Plaintiffs have retained competent counsel who are qualified and experienced in employment class action litigation and able to meet the demands necessary to litigate a class action of this size and complexity.

275.    The combined interests, experience, and resources of Plaintiffs and their counsel to competently litigate the individual and Class claims at issue in the instant action satisfy the adequacy of representation requirement of CPLR 902 and 903.

### FIRST CAUSE OF ACTION
### VIOLATIONS OF THE NYLL: FAILURE TO PAY AGREED UPON WAGES
*(On Behalf of Plaintiffs and the Class against Defendants TARGET and NYT)*

32

Case 1:25-cv-01337-DEH-SLC    Document 1-1    Filed 02/14/25    Page 33 of 45
Exhibit A to Notice of Removal

276.    Plaintiffs, on behalf of himself and the Class, hereby repeat and reallege the foregoing allegations as if set forth fully herein.

277.    During the full statutory period, Plaintiffs and the Class were protected by the provisions of the NYLL, N.Y. Lab. Law §§ 1, et seq., and all applicable regulations thereunder.

278.    The NYLL requires covered employers, including the Vendor Defendants, to compensate Officers at their established regular rates of pay for all hours worked.

279.    Plaintiffs and the Class were not exempt from the requirement that the Vendor Defendants pay them at their established regular rates of pay for all hours worked under the NYLL.

280.    During the statute of limitations period, the Vendor Defendants have engaged in a common policy and practice of failing to compensate Plaintiffs and the Class at their established regular rates of pay for all hours worked in a workweek.

281.    As a result of the Vendor Defendants' failure to compensate Plaintiffs and the Class at their established regular rates of pay for all hours worked in a workweek, The Vendor Defendants have violated the NYLL and/or applicable regulations thereunder.

282.    The Vendor Defendants have acted willfully and deliberately in maintaining an intentional practice of failing to compensate Plaintiffs and the Class in accordance with the NYLL.

283.    The Vendor Defendants' violation of the NYLL has significantly damaged Plaintiffs and the Class and entitle them to recover the total amount of their unpaid wages, an additional equal amount in liquidated damages, prejudgment interest, and attorneys' fees and costs.

**SECOND CAUSE OF ACTION**
**VIOLATIONS OF THE NYLL: FAILURE TO PAY MINIMUM WAGE**

33

Exhibit A to Notice of Removal

Case 1:25-cv-01337-DEH-SLC    Document 1-1    Filed 02/14/25    Page 34 of 45

**(On Behalf of Plaintiffs and the Class against the Vendor Defendants)**

284. Plaintiffs, on behalf of themselves and the Class, hereby repeat and reallege the foregoing allegations as if set forth fully herein.

285. During the full statutory period, Plaintiffs and the Class were protected by the provisions of the NYLL, N.Y. Lab. Law §§ 1, *et seq.*, and all applicable regulations thereunder.

286. The NYLL requires covered employers, including the Vendor Defendants, to compensate Officers at a rate not less than the applicable State minimum wage for all hours worked in a workweek.

287. Plaintiffs and the Class were not exempt from the requirement that the Vendor Defendants pay them minimum wages under the NYLL.

288. During the statute of limitations period, the Vendor Defendants have engaged in a policy and practice of failing to compensate Plaintiffs and the Class at a rate less than the applicable State minimum wage for all hours worked in a workweek.

289. As a result of the Vendor Defendants failure to compensate Plaintiffs and the Class at a rate not less than the applicable State minimum wage for all hours worked in a workweek, the Vendor Defendants have violated the NYLL and/or applicable regulations thereunder.

290. The Vendor Defendants have acted willfully and deliberately in maintaining an intentional practice of failing to compensate Plaintiffs and the Class in accordance with the NYLL.

291. The Vendor Defendants' violation of the NYLL has significantly damaged Plaintiffs and the Class and entitle them to recover the total amount of their unpaid wages, an

Case 1:25-cv-01337-DEH-SLC    Document 1-1    Filed 02/14/25    Page 35 of 45
Exhibit A to Notice of Removal

additional equal amount in liquidated damages, prejudgment interest, and attorneys' fees and costs.

### THIRD CAUSE OF ACTION
### VIOLATIONS OF THE NYLL: FAILURE TO PAY TIMELY WAGES
*(On Behalf of Plaintiffs and the Class against the Vendor Defendants)*

292.    Plaintiffs, on behalf of themselves and the Class, hereby repeat and reallege the foregoing allegations as if set forth fully herein.

293.    During the full statutory period, Plaintiffs and the Class were protected by the provisions of the NYLL, N.Y. Lab. Law §§ 1, et seq., and all applicable regulations thereunder.

294.    The NYLL requires covered employers, including the Vendor Defendants, to pay Plaintiffs and the Class all compensation earned in a particular workweek on the regularly scheduled pay day for the period in which such workweek ends.

295.    Plaintiffs and the Class were not exempt from the requirement that the Vendor Defendants timely pay them their wages.

296.    Throughout the statute of limitations period, the Vendor Defendants have engaged in a policy and practice of failing to pay Plaintiffs and the Class all compensation earned in a particular workweek on the regularly scheduled pay day for the period in which such workweek ends.

297.    As a result of the Vendor Defendants' failure to pay Plaintiffs and the Class all compensation earned in a particular workweek on the regularly scheduled pay day for the period in which such workweek ends, the Vendor Defendants have violated the NYLL and/or applicable regulations thereunder.

Exhibit A to Notice of Removal

Case 1:25-cv-01337-DEH-SLC    Document 1-1    Filed 02/14/25    Page 36 of 45

298.    The Vendor Defendants have acted willfully and deliberately in maintaining an intentional practice of failing to compensate Plaintiffs and the Class in accordance with the NYLL.

299.    The Vendor Defendants' violations of the NYLL have significantly damaged Plaintiffs and the Class and entitle them to recover the total amount of their unpaid wages, an additional equal amount in liquidated damages, prejudgment interest, and attorneys' fees and costs.

### FOURTH CAUSE OF ACTION
### VIOLATIONS OF THE NYLL:
### FAILURE TO PROVIDE NOTICES OF PAY RATE
#### (On Behalf of Plaintiff and the Class against the Vendor Defendants)

300.    Plaintiffs, on behalf of themselves and the Class, hereby repeat and reallege the foregoing allegations as if set forth fully herein.

301.    During the full statutory period, Plaintiffs and the Class were protected by the provisions of the NYLL, N.Y. Lab. Law §§ 1, et seq., and all applicable regulations thereunder.

302.    The NYLL requires covered employers, including the Defendants City and Targett provide employees, "at the time of hiring, a notice containing the following information: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer [ ]; the name of the employer; any 'doing business as' names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary," which is commonly referred to as a Notice of Pay Rate.

Case 1:25-cv-01337-DEH-SLC    Document 1-1    Filed 02/14/25    Page 37 of 45
Exhibit A to Notice of Removal

303.    Plaintiffs and the Class were not exempt from the requirement that the Vendor Defendants provide them with Notices of Pay Rate.

304.    During the statute of limitations period, the Vendor Defendants have engaged in a policy and practice of unlawfully failing to provide Notices of Pay Rate to Plaintiffs and the Class.

305.    As a result of the Vendor Defendants failure to provide Notices of Pay Rate to Plaintiffs and the Class, the Vendor Defendants have violated the NYLL and/or applicable regulations thereunder, including, inter alia, NYLL § 195.

306.    The Vendor Defendants have acted willfully and deliberately in maintaining an intentional practice of failing to provide proper notices to Plaintiffs and the Class in accordance with the NYLL.

307.    The Vendor Defendants violations of the NYLL entitle Plaintiffs and each member of the Class to recover $50 for each workday the violation occurred, not to exceed $5,000, plus attorneys' fees and costs.

### FIFTH CAUSE OF ACTION
### VIOLATIONS OF THE NYLL: INACCURATE WAGE STATEMENTS
*(On Behalf of Plaintiff and the Class against the Vendor Defendants)*

308.    Plaintiffs, on behalf of himself and the Class, hereby repeat and reallege the foregoing allegations as if set forth fully herein.

309.    During the full statutory period, Plaintiffs and the Class were protected by the provisions of the NYLL, N.Y. Lab. Law §§ 1, et seq., and all applicable regulations thereunder.

310.    The NYLL requires covered employers, including the Vendor Defendants to "furnish each employee with a statement with every payment of wages, listing the following: the dates of work covered by that payment of wages; name of employee; name

FILED: NEW YORK COUNTY CLERK 01/15/2025 09:33 AM    INDEX NO. 150717/2025
NYSCEF DOC. NO.: 1    Case 1:25-cv-01337-DEH-SLC    Document 1-1    Filed 02/14/25    Page 38 of 45    RECEIVED NYSCEF: 01/16/2025
Exhibit A to Notice of Removal

of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages."

311.    Plaintiffs and the Class were not exempt from the requirement that the Vendor Defendants furnish them proper wage statements.

312.    During the statute of limitations period, the Vendor Defendants have engaged in a policy and practice of unlawfully failing to provide accurate wage statements to Plaintiffs and the Class.

313.    As a result of the Vendor Defendants' failure to furnish accurate wage statements to Plaintiffs and the Class, the Vendor Defendants have violated the NYLL and/or applicable regulations thereunder, including, *inter alia*, NYLL § 195.

314.    The Vendor Defendants have acted willfully and deliberately in maintaining an intentional practice of failing to provide proper wage statements to Plaintiffs and the Class in accordance with the NYLL.

315.    The Vendor Defendants'  violations of the NYLL have significantly damaged Plaintiffs and the Class and entitle them to recover $250 for each workday the violation occurred, not to exceed $5,000, plus attorneys' fees and costs.

### SIXTH CAUSE OF ACTION
### VIOLATIONS OF THE FIFA: LATE PAYMENT OF COMPENSATION
**(*On Behalf of Plaintiff and the Class against all Defendants*)**
**(*Brought in the Alternative to Plaintiff and the Class's Claims under the FLSA and NYLL*)**

316.    Plaintiffs, on behalf of themselves and the Class, hereby repeat and reallege the foregoing allegations as if set forth fully herein.

Case 1:25-cv-01337-DEH-SLC   Document 1-1   Filed 02/14/25   Page 39 of 45

Exhibit A to Notice of Removal

317.    In the alternative to their claims brought under the FLSA and NYLL, Plaintiffs and the Class allege violations of the FIFA, N.Y.C. Admin. Code §§ 20-927, *et seq.*, and all applicable regulations thereunder.

318.    During the full statutory period, Plaintiffs and the Class were protected by the provisions of the FIFA and all applicable regulations thereunder.

319.    The FIFA requires hiring parties, including the Defendants, to pay freelance workers all contracted compensation on or before the date such contracted compensation is due under the terms of a contract or, if the contract does not specify when the contracted compensation is due or the mechanism by which such due date shall be determined, no later than 30 days after completion of the freelance worker's services under the contract.

320.    Plaintiffs and the Class were not exempt from the requirement that the Defendants timely pay them their contracted compensation under the FIFA.

321.    During the statute of limitations period, the Defendants have engaged in a policy and practice of hiring Plaintiffs and the Class to complete services without specifying when contracted compensation is due or the mechanism by which such due date shall be determined.

322.    As a result, Plaintiffs and the Class are owed all contracted compensation within 30 days of the completion of services by Plaintiffs and the Class.

323.    Throughout the full statute of limitations periods, the Defendants have engaged in a policy and practice of failing to pay Plaintiffs and the Class all contracted compensation within 30 days of the completion of services performed by Plaintiffs and the Class under their contracts.

Case 1:25-cv-01337-DEH-SLC    Document 1-1    Filed 02/14/25    Page 40 of 45

Exhibit A to Notice of Removal

324.    As a result of the Defendants failure to pay Plaintiffs and the Class all contracted compensation within 30 days of completion of services, the Defendants have violated the FIFA and/or applicable regulations thereunder.

325.    The Defendants have acted willfully and deliberately in maintaining an intentional practice of failing to compensate Plaintiffs and the Class in accordance with the FIFA.

326.    The Defendants' violations of the FIFA have significantly damaged Plaintiffs and the Class and entitle them to recover the total amount of their unpaid compensation, an additional equal amount in liquidated damages, prejudgment interest, and attorneys' fees and costs.

## SEVENTH CAUSE OF ACTION
## VIOLATIONS OF THE FLSA: FAILURE TO PAY MINIMUM WAGE
### (On Behalf of Plaintiffs and the Class against all Defendants)

327.    Plaintiffs, on behalf of themselves and the Class, hereby repeat and reallege the foregoing allegations as if set forth fully herein.

328.    During the full statutory period, Plaintiffs and the Class were protected by the provisions of the FLSA, 29 U.S.C. Chapter 8, and all applicable regulations thereunder.

329.    The FLSA requires covered employers, including the Defendants, to compensate Officers at a rate not less than the applicable federal minimum wage for all hours worked in a workweek.

330.    The FLSA requires covered employers, including the Defendants, compensate Officers at the rate of time and one half for all hours in excess of forty in a week.

331.    Plaintiffs and the Class were not exempt from the requirement that the Vendor Defendants pay them minimum wages and overtime premium under the FLSA.

Exhibit A to Notice of Removal
Case 1:25-cv-01337-DEH-SLC Document 1-1 Filed 02/14/25 Page 41 of 45

332.   During the statute of limitations period, the Defendants have engaged in a policy and practice of failing to compensate Plaintiffs and the Class at a rate equal to or above the applicable federal minimum wage for all hours worked in a workweek.

333.   During the statute of limitations period, the Defendants have engaged in a policy and practice of failing to compensate Plaintiffs and the Class at a rate of time and one-half for all hours worked in excess of forty in a given week.

334.   As a result of the Defendants failure to compensate Plaintiffs and the Class at a rate not less than the applicable federal minimum wage for all hours worked in a workweek, and failure to pay the overtime premium, the Defendants have violated the FLSA and/or applicable regulations thereunder.

335.   The Defendants have acted willfully and deliberately in maintaining an intentional practice of failing to comply with these requirements of the FLSA.

336.   The Defendants' violation of the FLSA has significantly damaged Plaintiffs and the Class and entitle them to recover the total amount of their unpaid wages and overtime premium, an additional equal amount in liquidated damages, prejudgment interest, and attorneys' fees and costs.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves, the FLSA Collective, and the Class, respectfully requests that this Court:

A.   Declare that the practices complained of herein are unlawful under applicable federal, State, and City law;

B.   Grant an injunction and order permanently restraining Defendants from engaging in such unlawful conduct;

Case 1:25-cv-01337-DEH-SLC    Document 1-1    Filed 02/14/25    Page 42 of 45
Exhibit A to Notice of Removal

C.      Declare this action to be maintainable as a class action pursuant to CPLR 901 and 902 and a collective action under FLSA;

D.      Instruct Defendants to provide the necessary information so Plaintiffs can give all putative members of the class and collective notice of this action and an opportunity to make an informed decision about whether to participate;

E.      Designate Plaintiffs as the representative of the Class, and his counsel of record as class counsel;

F.      Determine the damages sustained by Plaintiffs and the FLSA Collective as a result of Defendants' violations of the FLSA, and award those damages against Defendants and in favor of Plaintiffs and the FLSA Collective, plus such pre-judgment and post-judgment interest as may be allowed by law;

G.      Determine the damages sustained by Plaintiffs and the Class as a result of the Vendor Defendants' violations of the NYLL and FIFA, and award those damages against the Vendor Defendants and in favor of Plaintiffs and the Class, plus such pre-judgment and post-judgment interest as may be allowed by law;

H.      Award Plaintiff, the FLSA Collective, and/or the Class an additional equal amount as liquidated damages because Defendants' violations were willful and without a good faith basis;

I.      Award Plaintiff, the FLSA Collective, and/or the Class their reasonable attorneys' fees and costs and disbursements in this action including, without limitation, any accountants' or experts' fees; and

J.      Grant Plaintiff, the FLSA Collective, and/or the Class such other and further relief that the Court deems just and proper.

Case 1:25-cv-01337-DEH-SLC   Document 1-1   Filed 02/14/25   Page 43 of 45

Exhibit A to Notice of Removal

## DEMAND FOR JURY TRIAL

Plaintiff, on behalf of himself, the NYLL Collective and the Class, hereby demand a trial by jury on all issues of fact and damages.

Dated: January 14, 2025
      New York, NY

Respectfully submitted,

Law Office of John A. Scola, PLLC
Attorneys for Plaintiffs and the Putative Class and Collective
By:_____/s/ John Scola____
John Scola, Esq.

90 Broad Street Suite 1023
New York, New York 10004
(917) 423-1445
jscola@johnscolalaw.com

GODDARD LAW PLLC
*Attorneys for Plaintiffs* and the Putative Class and Collective
By: _/s/ Megan S. Goddard_
Megan S. Goddard, Esq.

39 Broadway, Suite 1540
New York, New York 10006
(646) 964-1178
Megan@goddardlawnyc.com

Charny & Wheeler P.C.
Attorneys for Plaintiffs and the Putative Class and Collective
By: /s/ Nathaniel K. Charny
Nathaniel K. Charny, Esq.

42 West Market Street
Rhinebeck, New York 12572
Tel - (845) 876-7500
Fax - (845) 876-7501
ncharny@charnywheeler.com

INDIVIDUAL VERIFICATION

STATE OF NEW YORK
COUNTY OF NEW YORK

Mohamed Monasar, being duly sworn, deposes and says; that he is the claimant herein; that he has read the foregoing summons and complaint against The City of New York, and Scott Henderson and knows the contents thereof; that the same is true to his own knowledge, except as to matters therein stated to be alleged on information and belief, and as to those matters that he believes them to be true.

Dated: New York, NY
     January 14, 2024

_____/s/ Mohamed Monasar _____
Mohamed Monasar

Exhibit A to Notice of Removal

## INDIVIDUAL VERIFICATION

STATE OF NEW YORK
COUNTY OF NEW YORK

      Gabrielle Walls, being duly sworn, deposes and says; that he is the claimant herein; that he has read the foregoing summons and complaint against The City of New York, and Scott Henderson and knows the contents thereof; that the same is true to his own knowledge, except as to matters therein stated to be alleged on information and belief, and as to those matters that he believes them to be true.

Dated: New York, NY
      January 14, 2024

                                  _____/s/ Gabrielle Walls_____
                                       Gabrielle Walls